**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 20-41-DLB-EBA**

**FREDDIE BREWER**                                                                             **PLAINTIFF**

**v.**                           **<u>MEMORANDUM OPINION AND ORDER</u>**

**ALLIANCE COAL, LLC, et al.**                                                    **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff's Motion for Conditional Certification (Doc. # 46). Defendants filed a Response in Opposition to Plaintiff's Motion (Doc. # 80), to which Plaintiff filed a Reply (Doc. # 82).[1] Accordingly, Plaintiff's Motion is ripe for the Court's review. For the reasons stated below, Plaintiff's Motion is **granted**.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Freddie Brewer brings this action on behalf of himself and all others similarly situated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, against Defendants Alliance Coal, LLC, Alliance Resource Operating Parties, L.P., Alliance Resource Partners, L.P., Alliance Resource Management GP, LLC, Excel Mining, LLC, and MC Mining, LLC, alleging that while employed as a coal miner for the Defendants at the Excel Mine at the MC Mining Complex located in Pike County,

---

[1] Defendants initially responded to Plaintiff's Motion by fling a Motion to Hold Plaintiff's Motion for Conditional Certification in Abeyance Pending Discovery (Doc. # 55). That Motion was denied by United States Magistrate Judge Edward B. Atkins (Doc. # 74), and Defendants' Objections to that Order (Doc. # 78) are denied in a further Order of the Court entered simultaneously herewith. Following denial of Defendants' Motion to Hold Plaintiff's Motion for Conditional Certification in Abeyance Pending Discovery, Defendants sought and were granted leave to file a response to the instant Motion for Conditional Certification. (Docs. # 75 and 76).

Kentucky, Defendants engaged in various wage/hour and overtime violations. (Doc. # 1).[2] More specifically, Plaintiff alleges that Defendants (1) required Plaintiff and similarly-situated employees to arrive at work prior to their scheduled shifts but did not pay employees for off-the-clock work including "donning" their uniforms and protective equipment, (2) failed to pay Plaintiff and similarly-situated employees for time spent working after the end of their shifts including time spent "doffing" their protective equipment, (3) failed to include bonus compensation in Plaintiff's and similarly-situated employees' overtime pay calculations. (*Id.* at ¶¶ 4-6, 29). At this stage, Plaintiff seeks to conditionally certify a class consisting of "all individuals who work or have worked [ ] as coal miners at the Excel Mine/MC Mining Complex between May 26, 2017 and the present." (Doc. # 46 at 2).

II.   **ANALYSIS**

   A.   **Standard of Review**

The FLSA permits collective actions "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To participate, potential plaintiffs must "opt into" the lawsuit. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "Only 'similarly situated' persons may opt in to such actions." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (citing *Comer*, 454 F.3d at 546). In determining whether to certify a collective action under the FLSA, courts often employ a two-step approach. *See Comer*, 454 F.3d at 546-47. At the first stage, referred to as "conditional certification," courts consider whether potential class members are similarly situated for purposes of issuing notice to those individuals

---

[2]   Plaintiff also brings claims under Kentucky Wage and Hours Act that are not relevant to the instant Motion for Conditional Certification. (Doc. # 1 at 28-29, 32).

2

so that they may have an opportunity to opt into the lawsuit. *Smith v. Lowe's Home Ctrs.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006). Plaintiff bears the burden of demonstrating that potential opt-in plaintiffs are similarly situated to the named plaintiff, yet this burden is not substantial at the conditional certification stage. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). Plaintiff need only make a "modest factual showing" that "his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47. This standard has been described as "fairly lenient" and "typically results in conditional certification of a representative class." *Id.* at 547 (internal quotations omitted). Further, during this first stage, "a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)).

By contrast, at the second, final certification stage, which occurs after discovery, courts "examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547 (internal quotation omitted). If the court determines at the second stage that the plaintiffs are not similarly situated, the court may decertify the class. *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005).

While the FLSA leaves "similarly situated" undefined, "it is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy . . . proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Plaintiffs may also be similarly situated when "their

3

claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.*

### B.      Similarly Situated

Plaintiff has demonstrated for purposes of conditional certification that the proposed class members are similarly situated.  As mentioned, Plaintiff alleges that Defendants engaged in the following two categories of violations: Failure to pay for off-the-clock work before and after scheduled shifts and failure to include bonus compensation in overtime pay calculations.  (Doc. # 1 at ¶¶ 4-6).

In support of his argument that Defendants had a common policy of requiring mine workers to engage in off-the-clock work before and after descending into the mines, Plaintiff relies on declarations from himself and four other opt-in plaintiffs who worked at various positions at the Excel Mine.[3][4]  (Docs. # 46-3, 46-4, 46-5, 46-6, and 46-7).  Each of the mine workers attests that Alliance Coal required them to be dressed and ready prior to the start of their shifts with their uniforms and protective equipment donned and any tools needed for the day collected.  (Docs. # 46-3 at ¶¶ 9-10, 46-4 at ¶¶11-16, 26-27, 46-5 at ¶¶ 10-13, 46-6 at ¶¶ 11, 13-15, and 46-7 at ¶¶ 11-13, 15-19).  However, they were not paid until the start of their shift, which began when they descended into the mine. (Docs. # 46-3 at ¶ 10, 46-4 at ¶ 11, 46-5 at ¶ 10, 46-6 at ¶ 13, and 46-7 at ¶ 11).  Plaintiff and the opt-in plaintiffs each also assert that they were not paid for time spent doffing their uniforms and protective equipment and returning their tools after emerging from the

---

[3]      In their Response, Defendants note that there are two Excel Mine locations.  (Doc. # 80 at 2).  For the sake of simplicity, the Court will refer to the Excel mines in the singular.

[4]      Plaintiff also submits a declaration of Dwight McBride, who worked at two different coal mines for Alliance Coal subsidiaries.  (Doc. # 46-9).

mine at the end of their scheduled shifts.  (Docs. # 46-3 at ¶ 16-18, 46-4 at ¶¶ 29-30, 46-5 at ¶¶ 17-19, 46-6 at ¶¶ 17-19, and 46-7 at ¶¶ 20-22).  Further, Plaintiff's allegation that Alliance Coal has a policy of paying bonuses which were not included in overtime pay calculations is supported by the declarations of two Excel mine employees who stated that they received safety bonuses that were not factored into overtime pay.  (Docs. # 46-4 at ¶ 34 and 46-7 at ¶ 25).

Based on the allegations in the Complaint and the supporting declarations, Plaintiff has made the requisite "modest factual showing" that Defendants have a common policy of requiring mine workers at the Excel mine to work prior to and after their scheduled shifts without pay and of failing to include bonuses in overtime pay calculations.  *See Comer*, 454 F.3d at 547.  Accordingly, Plaintiff has sufficiently demonstrated for purposes of conditional certification that the proposed class members are similarly situated by way of these common policies.  *See O'Brien*, 575 F.3d at 585; *Branson v. All. Coal, LLC*, No. 4:19-cv-155, 2021 WL 1550571, at *5 (W.D. Ky. Apr. 20, 2021) (granting conditional certification in lawsuit against Alliance Coal in case involving different mine locations based on similar allegations and supporting declarations).

Defendants raise several arguments in opposition, each of which is meritless.  Defendants first assert that pay discrepancies are addressed on an individual basis, such that employees are required to inform their foreman when they begin work early or work after the end of their shift.  (Doc. # 80 at 9-10).  Thus, according to Defendants, assessing Plaintiff's claims would require "review of literally tens of thousands of pages of payroll records, not to mention testimony from every foreman with whom each employee worked over a three-year period."  (*Id.* at 9).  However, as noted above, plaintiffs may be deemed

similarly situated when "their claims [are] unified by common theories of defendants' statutory violations, *even if the proofs of these theories are inevitably individualized and distinct*." *O'Brien*, 575 F.3d at 585 (emphasis added). Moreover, to the extent Defendants are asserting that Alliance Coal does not in fact have a uniform policy of requiring mine workers to work before and after their scheduled shifts without pay, this argument goes to the merits of Plaintiff's off-the-clock claims and is inappropriate at the conditional certification stage. *Waggoner*, 110 F. Supp. 3d at 765. The Court will not, at this stage, weigh Defendants' competing evidence and resolve factual disputes concerning the existence of Defendants' policy. *Id*.[5]

Second, Defendants assert that the variation among job sites, positions, and equipment precludes a finding that potential class members are similarly situated. (Doc. # 80 at 10-13). Defendants note that not all employees of the Excel mine work underground, with some employees working at an above-ground "prep plant," preparing coal for distribution. (*Id.* at 3, 10-11). However, the proposed class definition is limited to "individuals who work or have worked [ ] *as coal miners* at the Excel Mine/MC Mining Complex." (Doc. # 46 at 2) (emphasis added). Because the class definition is so limited, Defendants' argument regarding a lack of factual support for above-ground employees is not well taken. Should it become apparent after notice and discovery that the definition

---

[5]  As Plaintiff points out in his reply brief, the cases Defendants rely upon in support of this argument either address similar arguments made at the *final certification stage*, *see Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 672 (6th Cir. 2012); *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 857 (N.D. Ohio 2013), or after a significant period of pre-certification discovery, *see Jimenez v. Lakeside Pic-N-Pac, L.L.C.*, No. 1:06-cv-456, 2007 WL 4454295, at *2-3 (W.D. Mich. Dec. 14, 2007) (applying more stringent standard given that the parties had engaged in six months of pre-certification discovery).

should be modified, either party may file a motion to that effect.  *See Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 644 (W.D. Tenn. 2009).

Defendants also argue that even among employees who work underground, the variation in equipment requirements among different positions renders the proposed class too dissimilar for conditional certification due to the resulting variations in the time it takes various employees to don and doff their equipment.  (*Id.* at 11-12).  Yet, class members must be "similar, not identical."  *Comer*, 454 F.3d at 547.  Plaintiff has submitted affidavits from opt-in coal miners holding a variety of positions, including shuttle car runner, pinner, scoop operator, strip boater, roof boater, and belt shoveler—all of whom attest that they were required to arrive early to get dressed and secure equipment which they then returned off-the-clock and after their shifts had ended without pay.  (*See* Docs. # 46-3 through 46-7).  Thus, Plaintiff has provided adequate factual support for his claims as to "mine workers at the Excel Mine/MC Mining Complex."  (Doc. # 46 at 2); *see Stine v. Fedex Ground Package Sys., Inc.*, No. 18-114, 2019 WL 2518127, at *4 (E.D. Ky. June 18, 2019) ("Plaintiffs are not required to have identical job duties to satisfy the first stage.") (citing *Smith v. Generations Healthcare Servs, LLC*, No. 2:16-cv-807, 2017 WL 2957741, at *5 (S.D. Ohio July 11, 2017); *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 876 (S.D. Ohio 2017)).  Defendants' related argument that employees are allowed to take home their equipment and uniforms, (Doc. # 80 at 12-13), is inappropriate at this stage, as it goes to the merits of Plaintiff's donning and doffing claims and presents a factual dispute regarding Defendants' "dressed-and-ready" policy. *Waggoner*, 110 F. Supp. 3d at 764.

Defendants' third argument—that there is no "dressed-and-ready" policy—based on affidavits supplied by Defendants suffers the same fate. (Doc. # 80 at 13-14). As discussed above, the existence of such a policy is amply supported by Brewer and the opt-in Plaintiffs' declarations, and the Court will not weigh Defendants' competing evidence at this time. *See, e.g.*, *Hamm*, 275 F. Supp. 3d at 876 (declining to consider the defendant's competing declarations from current employees because balancing such evidence would be improper at the conditional certification stage).

Fourth, Defendants assert that Plaintiff has put forth no evidence that they ever paid certain types of bonuses identified in the Complaint, including attendance bonuses, production bonuses, and Christmas bonuses. (Doc. # 80 at 14). According to Defendants, Plaintiff has therefore not adequately demonstrated that Defendants have a policy of failing to account for those types of bonuses in employee overtime pay calculations. (*Id.*). This argument similarly, and improperly, goes to the merits of Plaintiff's claim. It does not alter the above finding that based on the declarations of two opt-in plaintiffs, Plaintiff has demonstrated for purposes of conditional certification that Defendants had a policy of failing to include bonuses in overtime pay calculations. *See supra* pp.4-5.

Defendants' fifth argument is also unpersuasive. Defendants argue that Plaintiff has not demonstrated that he or the potential class members were employed by any of the entity Defendants besides Excel Mining, LLC. (Doc. # 80 at 15). "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 762 (W.D. Tenn. 2011) (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965

8

(6th Cir. 1991)). In addition, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *Id.* (quoting *Dole*, 942 F.2d at 965). Accordingly, in light of the lenient standard at the conditional certification stage, courts often defer the determination of whether multiple defendants should be treated as a single employer until the decertification stage. *Id.*; *see also Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 WL 4743637, at *4 (S.D. Ohio Sept. 29, 2019) (deferring determination of whether related employers should be considered joint employers under the FLSA for the decertification stage).

Plaintiff alleges claims against six Defendants: (1) Alliance Coal, LLC, (2) Alliance Resource Operating Partners, L.P., (3) Alliance Resource Partners, L.P., (4) Alliance Resource Management GP, LLC, (5) Excel Mining, LLC, and (6) MC Mining, LLC. (Doc. # 1 at 1). The Complaint asserts that the first four listed Defendants are the parent entities that own and control Excel Mining, LLC and MC Mining, LLC. (*Id.* at ¶ 1). The Complaint also alleges that Alliance Resource Partners, L.P. owns 98.9899% of the interest in Alliance Resource Operating Partners, L.P., which in turn owns 99.999% of the interest in Alliance Coal, LLC, which owns 100% of the interest in Excel Mining, LLC and MC Mining, LLC. (*Id.* at 2 n.1). These allegations sufficiently establish that the Defendants are joint employers for purposes of sending notice to potential opt-in plaintiffs, and the Court will defer making a final determination on this issue until the decertification stage.

Defendants' remaining arguments in support of denying conditional certification involve concerns over anticipated individualized proof and defenses, as well as manageability concerns. (Doc. # 80 at 15-20). Defendants repeat their argument,

9

addressed above, that the need to review payroll records and interview foreman should preclude conditional certification. (*Id.* at 16-17). Although Defendants argue that they have a policy of permitting employees to raise pay discrepancies on an individualized basis, at this point, Plaintiff has provided sufficient evidence that Defendants expected coal miners to work without pay before and after their scheduled shifts. (*See* Docs. # 46-3 through 46-7). Without the benefit of discovery, it is not clear whether any potential class members raised the issue of off-the-clock pay with their foremen, and if so, whether their hours were adjusted. The Court will not weigh the parties' competing declarations and finds Plaintiffs' evidence of a uniform policy of Defendants' failure to pay for off-the-clock work sufficient for conditional certification. Similarly, Defendants' arguments that the class should not be conditionally certified because their potential defenses—including an off-set defense with respect to meal breaks and anticipated defenses to claims of willfulness—will require individualized proof and are more appropriately raised at the decertification stage. (Doc. # 80 at 17-19); *see, e.g.*, *Sutka v. Yazaki N. Am., Inc.*, No. 17-10669, 2018 WL 1255767, at *11 (E.D. Mich. Mar. 12, 2018); *see also O'Brien*, 575 F.3d at 585. The Court will also more appropriately take up Defendants' manageability concerns at that time. (Doc. # 80 at 19-20); *see, e.g.*, *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 857 (N.D. Ohio 2013). Accordingly, for the reasons stated above, Plaintiff's Motion for Conditional Certification (Doc. # 46) is **granted**.

### C. Notice

Next, the Court will address Plaintiff's proposed Notice to potential opt-in class members. Following conditional certification, "district courts have discretion . . . to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann-*

*La Roche v. Sperling*, 493 U.S. 165, 169 (1989).  Here, Plaintiff attaches a proposed Notice form to his Motion for Conditional Certification.  (Doc. # 46-1).  In their Response, Defendants raise several objections to the form and substance of the Notice.  (Doc. # 80 at 20-25).  Plaintiff, in his Reply, has agreed to make several changes to accommodate Defendants' objections; however, certain disputes remain.  (Doc. # 82 at 14-16).

  Defendants first object to Plaintiff's plan to send notice via text message.  (Doc. # 80 at 22).  Plaintiff has agreed to send notice only via regular mail and email.  (Doc. # 82 at 15).  Yet, Plaintiff still requests that Defendants provide telephone numbers for collective action members in order to obtain updated contact information should any of the notices be returned as undeliverable.  (*Id.*).  Defendants also object to Plaintiff's plan to post notice at the mine site, (Doc. # 80 at 22-23), an issue that remains in dispute, (Doc. # 82 at 15).  Third, Defendants rebuke Plaintiff's suggested notice period of ninety days and suggest a period of forty-five days instead (with no "reminder notice").  (Doc. # 80 at 23).  Plaintiff has offered to compromise on a sixty-day notice period but continues to insist on sending reminder notice.  (Doc. # 82 at 15).  Fourth, Defendants object to the Notice and Consent forms' references to the Defendants as "Alliance Coal," (Doc. # 80 at 24), an issue that remains in dispute, (Doc. # 82 at 15).  Plaintiff does, however, agree to Defendants' request to add several sentences regarding its position in the case.  (Doc. # 82 at 15-16).  Finally, the parties remain at odds over whether the proposed Notice adequately describes opt-in plaintiffs' obligations to participate in the case and whether the Notice and Consent should refer to opt-in plaintiffs' right to retain their own counsel.  (Docs. # 80 at 24-25 and 82 at 6).

In light of the parties' progress in reaching an agreement as to several of the contested aspects of the proposed Notice and Consent forms, the Court finds that the parties would benefit from a brief meet-and-confer period to address the outstanding issues. *See Stine*, 2019 WL 2518127, at *6.

### III.     CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)     Plaintiff's Motion for Conditional Certification (Doc. # 46) is **granted**. Specifically, the Court conditionally certifies the following class:

> All individuals who work or have worked as coal miners at the Excel Mine/MC Mining Complex between May 26, 2017 and the present.

(2)     The parties shall **promptly meet and confer** as to the content and form of Plaintiff's proposed Notice and Consent forms (Doc. # 46-1);

(3)     **Within fourteen (14) days of the date of entry of this Order**, the parties shall file a **Joint Status Report** advising of the results of the parties' conference and attaching proposed revised notice and consent forms. Should the parties fail to reach an agreement and find that a joint report is not possible, the parties shall each file individual reports with their own attendant proposed revised forms, which the Court shall entertain for the purposes of drafting finalized notice and consent forms; and

(4)     Upon the Court's approval of the notice and consent forms, Plaintiff is permitted to disseminate the notice to all putative class members via regular mail and email. Defendants must therefore produce the names, all known addresses, and email addresses of putative class member **within thirty (30) days of this Court's order finalizing the notice and consent forms.**

This 20th day of July, 2021.



Signed By:
David L. Bunning
United States District Judge

J:\DATA\ORDERS\PikeCivil\2020\20-41 Order Conditional Class Cert.docx