**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL CASE NO. 20-41-DLB**

**FREDDIE BREWER,** on behalf of                                                                  **PLAINTIFF**
himself and all others similarly situated


**V.**                                              **MEMORANDUM ORDER**


**ALLIANCE COAL, LLC, et al.**                                                                **DEFENDANTS**

* * * * * * * * * * * * * * * * *

This matter is before the Court upon the parties' Status Reports on the collective action notice forms and distribution protocol (Docs. # 96 and 97), submitted pursuant to a Memorandum Opinion & Order by the Court (Doc. # 89) that instructed the parties to meet and confer on the issues, in hopes for a mutual agreement between them.  The parties have unfortunately been unable to reach such an agreement.  Therefore, having reviewed the reports submitted by both parties, and for the reasons stated below, the Court has finalized the collective action notice forms and distribution protocol.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

This is a Fair Labor Standards Act ("FLSA") collective action brought by Freddie Brewer, on behalf of himself and others similarly situated, against the Defendants Alliance Coal, LLC, and associated entities.  (Doc. # 1).  On July 20, 2021, the Court issued a Memorandum Opinion & Order in which it conditionally certified Plaintiff's proposed collective action and instructed the parties to meet and confer to seek an agreement on notice forms (an Opt-In Notice Form and an Opt-In Consent Form) and protocol for

1

distribution of those forms. (Doc. # 89 at 12). The parties met, and thereafter submitted a Joint Status Report on August 10, notifying the Court that they were unable to agree completely, and that they would thus be submitting individual reports. (Doc. # 92). The Court agreed to an extension of time for submission of those individual reports (Doc. # 94), and the Court received them thereafter. (Docs. # 96 and 97).

The parties now report that they have largely reached agreement on the language to be used in the notice forms,[1] and that the remaining disputes concern the distribution protocol for the forms. (Doc. # 97 at 2). However, the parties each submitted their own versions of an Opt-In Notice Form and an Opt-In Consent Form. While the proposed Opt-In Consent Forms are substantially identical, (Docs. # 96-1 and 97-2), the proposed Opt-In Notice Forms are not, albeit in an insignificant manner.[2] (Docs. # 96-2 and 97-1).

Thus, in addition to adjudicating the parties' disputes on (1) the issuance of a reminder notice, (2) the providing of telephone numbers, (3) the physical posting of notice in relevant facilities, and (4) the usage of an electronic signature service, the Court also hereby finalizes the language used in the Opt-In Notice Form and the Opt-In Consent Form.

---

[1] More specifically, Plaintiff reported that the parties' agreement on the form language, (Doc. # 97 at 2), while Defendant briefed the Court on objections to the form language based on the listed employer's name, and the form's inclusion of the case caption in the header, (Doc. # 96 at 8-9). However, the forms provided by the parties do not differ on either of these issues, as they both only refer to "Excel Mining" and do not include the case caption in the header. The Court thus concludes that the parties have come to an agreement on those issues. (*Id*.).

[2] To be clear, the parties also disagree on whether or not a web link to complete the notice forms electronically should be included in the form language, but because that issue is addressed in the substantive portions of the parties' briefings, (Docs. # 96 at 6-8 and # 97 at 5-8), the Court does not address it as "language" in the forms.

## II. ANALYSIS

### A. Standard of Review

A district court has "both the duty and the broad authority to exercise control . . . and to enter appropriate orders governing the conduct of counsel and the parties" while overseeing the notice process in an FLSA collective action. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981)). The Court's supervision of the notice process should ensure that notice is "timely, accurate, and informative," while taking care to remain "scrupulous to respect judicial neutrality . . . avoid[ing] even the appearance of judicial endorsement." *Id.* at 172, 174.

Also noteworthy to the Court is *Branson et al. v. Alliance Coal, LLC et al.*, No. 4-19-CV-155-JHM (W.D. Ky., filed Nov. 2, 2019), a nearly identical FLSA collective action proceeding in the Western District of Kentucky, this Court's sister court. *Branson* was brought by a similar collective of employee plaintiffs against the same named Defendant, for the same alleged FLSA wage-and-hour violations, but involves named Defendant's coal mines and corporate subsidiaries in Western Kentucky instead of those in Eastern Kentucky, which are at issue here.[3] In May of this year, a mere three months ago, Judge McKinley issued a Memorandum Opinion and Order in *Branson*, in which he ruled on

---

[3] The collective plaintiffs and named defendant in *Branson* are represented by the same counsel representing them in this District. In fact, equally identical actions are currently ongoing in the Northern District of West Virginia, the Southern District of Illinois, and the Southern District of Indiana, all litigated by the same counsel, involving the same named defendant's mines and subsidiaries in each relevant district. *See Rettig et al. v. Alliance Coal, LLC et al.*, No. 2:21-CV-8-TSK (N.D. W. Va., filed Apr. 6, 2021); *Cates v. Alliance Coal, LLC et al.*, No. 3:21-CV-377-SMY (S.D. Ill., filed Apr. 9, 2021); *Prater v. Alliance Coal, LLC et al.*, No. 3:21-CV-66-RLY-MPB (S.D. Ind., filed Apr. 13, 2021). This case and *Branson* are the only actions that have reached the notice and consent stage as of the filing date of this Memorandum Order.

3

some very similar disputes between two nearly identical sets of parties. *Branson v. Alliance Coal, LLC*, No. 4:19-CV-155-JHM, 2021 WL 1996392 (W.D. Ky. May 18, 2021).

The Court recognizes that each district court has broad discretion to supervise the notice and consent process in this type of action. *Hoffmann-La Roche*, 493 U.S. at 171. However, with five essentially identical actions proceeding concurrently in Federal courts across the region, the Court is not persuaded that each of these actions needs substantially different processes for notice and consent. Efforts by either party's counsel to expand or diminish the notice and consent processes approved by other courts in these substantially identical actions are unduly litigious and are also incompatible with the collaborative spirit encouraged by the "meet and confer" process previously ordered by this Court. (Doc. # 89). Thus, where applicable, this Court will defer to the ruling made by Judge McKinley in *Branson*.

### B.     Reminder Notice

According to Plaintiff, he requests two "modifications" to the distribution protocol in *Branson* "based on the experiences [of his counsel] in sending notice to the coal miners in that group." (Doc. # 97 at 4). One of those modifications is the issuance of a "reminder notice" that would ostensibly remind a potential collective member who may have disregarded, lost, or forgotten about the initial notice. (*Id.* at 4, 9). Plaintiff has cited many cases across the country in which reminder notices have been used, and he also notes that the issue was not adjudicated in *Branson*. (*Id.* at 10-11). Defendants object, arguing that a reminder notice is not warranted in this case. (Doc. # 96 at 5).

Beyond broad policy statements in support of reminder notices, Plaintiff has not provided facts to support his proposed "modifications" from the *Branson* protocol.

4

Specifically, Plaintiff has not shown how or why his counsel's "experiences in sending notice . . . [to] that group" warrants an expansion of the protocol. (Doc. # 97 at 4). In the Court's view, an unjustified expansion of the *Branson* protocol could give rise to concerns related to the Court's neutrality, which it is charged to scrupulously protect. *Hoffmann-La Roche*, 493 U.S. at 174.

Therefore, in the interest of "eliminating concerns of judicial endorsement," the Court declines the issuance of a reminder notice, as Plaintiff has not shown why such a notice is specifically necessary in this case. *See Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2019 WL 6499127, at *12 (E.D. Ky. Dec. 3, 2019) (quoting *Williams v. King Bee Delivery, LLC*, No. 5:15-CV-306-JMH, 2017 WL 987452, at *4 (E.D. Ky. Mar. 14, 2017)).

### C. Telephone Numbers

Plaintiff has also requested that the Court direct Defendants to provide his counsel with telephone numbers for potential collective members as an alternate form of notice for when mail or email are returned as undeliverable. (Doc. # 97 at 4-5). Plaintiff has also categorized this request as a "modification" to the *Branson* protocol. (*Id.*) But in *Branson*, the plaintiff (by the same counsel) did request authorization to provide notice via text message, as an alternate method of notice on potential members for which the Defendants did not have email addresses, and that request was denied. *See* 2021 WL 1996392, at *2. Even though in this case, Plaintiff is less-specifically requesting a list of telephone numbers, the Court here sees no meaningful distinction between the instant request and the plaintiff's more-specific request in *Branson* for authorization to provide notice via text message.

5

Notice via text message would also require the Defendants to disclose telephone numbers, and the *Branson* court referred to notice via text message as "intrusive." *Id*. Plaintiff now seeks to use telephone numbers "either for sending a text message notice *or* to call" potential collective members, in an apparent attempt at expanding the *Branson* protocol. (Doc. # 97 at 12) (emphasis added). If the *Branson* court determined text messaging alone to be "intrusive," and this Court agrees, then text messaging *and* voice calling would be even more intrusive. Accordingly, the Court declines to direct Defendants to disclose telephone numbers of potential collective action members.

### D. Physical Posting of Notice

Even though also previously litigated in *Branson*, the parties still disagree on whether to physically post notice at relevant mine facilities. *See* 2021 WL 1996392, at *2. The posting was allowed in *Branson*, and the court there noted a "prevailing trend" in the Sixth Circuit allowing such physical postings of notice. *Id*. Although courts located specifically in the Eastern District have diverged on the issue,[4] this Court is nonetheless inclined to follow the Sixth Circuit "prevailing trend" cited in *Branson*. Furthermore, the Court sees no direct factual indication from either party as to why the *Branson* protocol should be modified in this case, and the Court thus approves the physical posting of notice in conspicuous locations at the relevant mine facilities.

---

4   *Compare Abney v. R.J. Corman R.R. Grp., LLC*, No. 5:17-CV-260-DCR, 2017 WL 3723657, at *3 (E.D. Ky. Aug. 29, 2017) (denying physical posting of notice), *with Adams v. Nature's Expressions Landscaping, Inc.*, No. 5:16-CV-98-JMH, 2016 WL 6471455, at *4 (E.D. Ky. Nov. 1, 2016), *and Campbell v. Middle Ky. Cmty. Action P'ship, Inc.*, __ F. Supp. 3d __, 2021 WL 2012298, at *7 (E.D. Ky. May 20, 2021) (all approving physical posting of notice).

E. **Electronic Signatures**

The parties also still disagree, just as they did in *Branson*, on the usage of an electronic signature service ("DocuSign") for collecting responses to the notice forms. *See* 2021 WL 1996392, at *3. Defendants contend that they have only recently become aware of issues with the electronic signature service that they were not aware of at the time of notice approval in *Branson*. (Doc. # 96 at 7). They state that "[s]pecifically, it is defense counsel's understanding from prior experience with this system" that a certain header appears when a user first clicks on a link to electronically sign a document. (*Id*. at 6). This header is purportedly "inappropriate and misleading, and it demonstrates why electronic signature platforms like DocuSign are inappropriate for collective action notice processes." (*Id*. at 7).

Defendants do not cite caselaw disapproving of the use of DocuSign under their seemingly novel theory, and the Court is likewise aware of none.[5] Defendants do cite one case from the Middle District of Florida in which usage of Adobe Sign, a similar service, was rejected, but even that court's disapproval was not based on the concerns Defendants raise here, and that court also reasoned that the plaintiff had not provided justification for electronic signatures. *Gibbs v. MLK Express Servs., LLC*, No. 2:18-CV-434-FTM-38, 2019 WL 1980123, at *18-19 (M.D. Fla. Mar. 28, 2019).[6] Here, Plaintiff has provided justification (Doc. # 97 at 5-6), the process has been used successfully in a

---

[5]   DocuSign has previously been approved for use in this District in an FLSA collective action. *See Ware v. CKF Enters.*, No. 5:19-CV-183-DCR, 2020 WL 2441415, at *3 (E.D. Ky. May 12, 2020) (approving DocuSign but denying the proposed notice protocol in part on different grounds).

[6]   The case cited by Defendants is a Recommendation & Report Order by a United States Magistrate Judge, which was later adopted in part by the District Judge, at *Gibbs v. MLK Express Services, LLC*, No. 2:18-CV-434-FTM-38, 2019 WL 2635746 (M.D. Fla. June 27, 2019).

7

substantially identical action, *see Branson*, 2021 WL 1996392, and as Judge McKinley stated in *Branson*, it flows logically that a notice form received via email should be available for completion in the same manner. *Id*. at *3.

Additionally, Defendants have raised concerns about identity verification and the potential for one DocuSign user to submit multiple forms on behalf of others. (Doc. # 96 at 7 n.4). The *Branson* court appropriately dismissed these concerns and notified the Defendants of an avenue for recourse under a local general order, by which they can formally object to the authenticity of an electronically signed document filed with the Court. 2021 WL 1996392 at *3. That order, Joint General Order 16-03, is a "joint" order in that it is shared between this District and the Western District of Kentucky, and as such, it is just as applicable in this case as it was in *Branson*.[7] Furthermore, while Defendants assert that "DocuSign does not verify an individual user's identity in any way," neither does the postal service, nor does a printed and scanned form submitted via email, and nor does a facsimile—all being submission methods to which Defendants have agreed. (Doc. # 96 at 7 n.4).

Lastly, as a proposed alternate solution to their concerns "in the event the Court is inclined to nevertheless authorize" DocuSign's usage, Defendants have tendered "certain terms" purporting to require Plaintiff's counsel to work on removing the protested DocuSign header, to require the DocuSign link to be disclosed early to Defendants for inspection, and to require Plaintiff's counsel to file in the court record an "audit trail" with each and every electronically signed form. (Doc. # 96 at 8 n.5).

---

[7] To date, Defendants have not filed an objection to the veracity of any electronically signed notice form in *Branson*, and several hundred forms have been submitted via DocuSign. *See, e.g.*, Notices of Filing Consents, *Branson v. Alliance Coal, LLC et al.*, No. 4:19-CV-155-JHM (W.D. Ky.), ECF No. 177, *et seq*.

In the interest of preserving judicial resources, the Court has little interest in processing these potentially copious "audit trails" without a supporting demonstration of necessity. Defendants have provided no such demonstration. As previously stated, Joint General Order 16-03 provides Defendants with an avenue of recourse if they wish to contest the authenticity of any electronically signed document filed with the Court. To date, Defendants have not accordingly filed an objection to a single DocuSign signature in *Branson*. *See supra*, note 7. If Defendants were to raise an objection in this case, the Court could then consider directing Plaintiff's counsel to provide DocuSign "audit trails" on a case-by-case basis.[8]

But broadly requiring Plaintiff's counsel to provide an "audit trail" for every submission and requiring the Court to process those documents for every submission is unduly burdensome. In short, the Court sees no demonstrable need for Defendants proposed terms, and consequently rejects them.

Thus, the Court approves the usage of DocuSign for submission of collective action notice forms in this matter, rejects Defendants proposed terms on the usage of DocuSign, and approves the notice forms with a link providing for submission via DocuSign.

### F.     Form Language

Finally, both parties have provided to the Court a proposed Opt-In Notice Form and a proposed Opt-In Consent Form. (Docs. # 96-1, 96-2, 97-1, and 97-2). Notwithstanding the previously discussed electronic signature link issue, the parties' Opt-

---

[8]  To be clear, the Court does construe these DocuSign audit trails as being well within the purview of Fed. R. Civ. P. 37(e), under which Plaintiff and his counsel have an affirmative duty to preserve "electronically stored information" within their control. *See, e.g.*, *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008).

9

In Consent Forms are identical. The Opt-In Notice Forms are not, however, in the relatively minor respect that Defendants' proposed forms use the phrase "additional party plaintiff" where Plaintiff's forms use the word "participant." Finding that the word "participant" better aligns with "the broad remedial goal" of the FLSA, *Hoffmann-La Roche*, 493 U.S. at 173, the Court approves Plaintiff's forms using the word "participant," along with the inclusion of a link for electronic signature and submission.

### III.  CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The Court **approves** Plaintiff's Opt-in Notice Form (Doc. # 97-1);

(2) The Court **approves** Plaintiff's Opt-in Consent Form (Doc. # 97-2);

(3) The Court **directs** the parties to conduct the notice process as follows:

(a) Defendants shall deliver to Plaintiff's counsel an electronic spreadsheet of the names, last known mailing addresses, and last known email addresses (if any) of all potential members within the conditionally certified collective (Doc. # 89) **within fifteen (15) business days from the date of this order;**

(b) Plaintiff's counsel shall disseminate the approved Opt-In Notice Form and approved Opt-In Consent Form via U.S. Mail and email to potential collective members **within five (5) business days of Defendants' delivery** of the above referenced spreadsheet;

(c) Defendants shall post the approved Opt-In Notice Form at conspicuous locations at all relevant facilities **within ten (10) business days of Defendants' delivery** of the above referenced spreadsheet;

10

(d)     Any potential member of the collective **has sixty (60) days from the date on which the notice forms are mailed or emailed** to return a copy of the Opt-In Consent Form, via U.S. Mail, email, fax, or DocuSign; and

(e)     Opt-In Consent Forms will be deemed to be filed **on the day they are stamped as received by Plaintiff's counsel**, who shall file in the record all such timely Opt-In Consent Forms received on a weekly basis, at minimum.  All Opt-In Consent Forms that are filed must be postmarked, emailed, or submitted otherwise within the deadline provided in (d).

This 23rd day of August, 2021.

Signed By:
*David L. Bunning*   *DB*
United States District Judge

K:\DATA\ORDERS\PikeCivil\2020\20-41 Order on Notice and Consent.docx