**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL CASE NO. 20-41-DLB-EBA**

**FREDDIE BREWER,** *on behalf of*  **PLAINTIFF**
*himself and all others similarly situated*

v.      **MEMORANDUM ORDER**

**ALLIANCE COAL, LLC, et al.**      **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Defendants' Motion for Reconsideration (Doc. # 102), in which Defendants request the Court to reconsider its Memorandum Order setting the notice and consent protocol for this Fair Labor Standards Act ("FLSA") collective action. (Doc. # 98, hereinafter "Notice Order"). The Motion has been fully briefed (Docs. # 103 and 105), and is thus ripe for the Court's review. For the reasons stated herein, the Court **denies** Defendants' Motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This is an FLSA collective action brought by Freddie Brewer, on behalf of himself and others similarly situated, against Defendants Alliance Coal, LLC, and associated entities. (Doc. # 1). On August 23, 2021, the Court entered the Notice Order, in which it approved a notice and consent protocol for the action. (Doc. # 98). In the Notice Order, the Court issued a protocol for the distribution of notice and consent forms. (*Id.*). Additionally, the Court noted in the Order that "a nearly identical FLSA collective action" was proceeding in the Western District of Kentucky, captioned *Branson et al. v. Alliance*

*Coal, LLC et al.*, No. 4-19-CV-155-JHM (W.D. Ky., filed Nov. 2, 2019), in addition to three "equally identical actions" proceeding in other nearby district courts besides *Branson*. (*Id.* at 3, n.3). The Court also stated that in each of these actions, "Alliance Coal, LLC" is the named defendant, and it is represented by the same counsel.[1] (*Id.*) From there, after noting its "broad discretion" to enact notice protocol in FLSA actions under *Hoffmann-La Roche, Inc. v. Sperling*, 492 U.S. 165, 171 (1989), the Court reasoned that "with five essentially identical actions . . . [it was] not persuaded that each of these actions needs substantially different processes for notice and consent." (Doc. # 98 at 4).

Accordingly, as *Branson* had already resolved notice and consent protocol in a substantially similar FLSA collective, the Court wrote that "where applicable, [it] would defer to the ruling made by Judge McKinley in *Branson*," and reminded the parties that re-litigation of every minute argument across each of these cases was "unduly litigious and . . . incompatible with the collaborative spirit encouraged by . . . this Court." (*Id.*). From there, the Court did as it said it would do – in exercising its broad discretion to oversee the notice and consent process, it deferred to *Branson* where applicable, and to the extent that new arguments were raised, the Court addressed those, as well. (*See generally* Doc. # 98). After moving through the arguments made by both parties, the Court did not find reasons to expand or reduce the *Branson* protocol, and so the *Brewer* protocol was entered.

---

[1] In each of these five actions, some combination of the law firms Berger & Montague, PC, Lichten & Liss-Riordan, PC; Edelson Lechtzin LLP; Stoll Keenon Ogden, PLLC; and Seyfarth Shaw LLP represent the parties, in addition to local counsel in each case. Berger & Montague, PC and Stoll Keenon Ogden, PLLC are counsel of record for the plaintiffs and defendants, respectively, in each and every one. *See Branson*, No. 4:19-CV-155-JHM (W.D. Ky., filed Apr. 6, 2021); *Rettig et al. v. Alliance Coal, LLC et al.*, No. 2:21-CV-8-TSK (N.D. W. Va., filed Apr. 6, 2021); *Cates v. Alliance Coal, LLC et al.*, No. 3:21-CV-377-SMY (S.D. Ill., filed Apr. 9, 2021); *Prater v. Alliance Coal, LLC et al.*, No. 3:21-CV-66-RLY-MPB (S.D. Ind., filed Apr. 13, 2021).

Approximately one week later, Defendants filed a Motion for Reconsideration on the Notice Order. (Doc. # 102). Plaintiffs have filed a responsive brief in opposition, (Doc. # 103), and Defendants have replied. (Doc. # 105). Accordingly, having been fully briefed, the Motion is now ripe for the Court's review.

## II.     ANALYSIS

Generally, the Federal Rules of Civil Procedure do not provide for motions for reconsideration. *Westerfield v. United States*, 366 F. App'x 614, 619 (6th Cir. 2010). However, in the Sixth Circuit, district courts have authority to consider motions for reconsideration of interlocutory orders under federal common law and Rule 54(b). *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). That authority allows district courts to grant motions for reconsideration on interlocutory orders "as justice requires." *Id.* (quoting *Citibank (South Dakota), N.A. v. FDIC*, 857 F. Supp. 976, 981 (D.D.C. 1994)). Usually, "justice requires" granting of such a motion when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (quoting *Reich v. Hall Holding Co.*, 990 F. Supp 955, 965 (N.D. Ohio 1998)). Nonetheless, however, district courts have "significant discretion in deciding motions for reconsideration," *Woods v. RHA/Tenn. Grp. Homes, Inc.*, 803 F. Supp. 2d 789, 798 (M.D. Tenn. 2011), and although commonly filed, motions for reconsideration are "extraordinary in nature, and because they run contrary to finality and repose, should be discouraged." *Younglove Constr., LLC v. PSD Dev., LLC*, 767 F. Supp. 2d 820, 824 (N.D. Ohio 2011). Lastly, when a motion for reconsideration is premised upon an argument raising "manifest injustice," the injustice

must be actually "apparent to the point of being indisputable." *Shirlington Limousine & Transp., Inc. v. United States*, 78 Fed. Cl. 27, 31 (2007).

Here, Defendants purport that reconsideration of the Court's Notice Order is necessary under the third prong for reconsideration: a "need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959. More specifically, Defendants cry foul on the Court's reliance upon *Branson* in issuing the notice and consent protocol, asserting that the Court made "implicit assumptions" that are "incorrect, premature, and prejudicial," which will expose Defendants to "manifest injustice" unless corrected. (Doc. # 102-1 at 6). Specifically, Defendants request the Court to vacate any and all parts of the Notice Order that "suggest this action is 'nearly identical' in all respects to *Branson*, or any other action." (*Id.*) They also request a reconsideration of the Court's determination on the usage of DocuSign, "to the extent the Court reached its rulings . . . solely as a result of its findings about *Branson*[.]" (*Id.*)

Unfortunately for Defendants, "implicit assumptions" do not create "manifest injustice." To the extent that Defendants take issue with the Court's so-called "assumptions," the Court reminds both parties that arguments based upon speculation and conjecture, read entirely from between the lines of a written order, do not hold weight in a court of law, and certainly fall short of demonstrating "manifest injustice . . . apparent to the point of being indisputable." *Shirlington*, 78 Fed. Cl. at 31. For that reason, and for the reasons that follow, the Court expressly declines to reconsider its previous Order, but will accordingly clarify portions to which Defendants have taken issue.

To begin, Defendants have expressed broad concern with the Court's reliance upon *Branson* in issuing the notice and consent protocol in this action. (*See, e.g.*, Doc.

# 102-1 at 2). Defendants write that the Court's deference to *Branson* "suggests all rulings in this case therefore must or should align with corresponding rulings in *Branson*, or any other action." (*Id.*). Stated plainly, Defendants have manufactured a crisis where one simply does not exist. Nothing in the Court's Notice Order purported to suggest that "*all* rulings in this case therefore must or should align" with *Branson* or any other case. (*See id.* and Doc. # 98). In fact, the Court stated clearly that it was "not convinced that each of these actions needs substantially different *processes for notice and consent*," and that "efforts by either party's counsel to expand or diminish the *notice and consent processes* approved by other courts in these substantially identical actions are unduly litigious." (Doc. # 98 at 4) (emphasis added).

More specifically, the Court's reasoning in the Notice Order rested in the fact that the same attorneys litigated notice and consent in *Branson* only a few short months before re-hashing some of the exact same issues and arguments before this Court in *Brewer*. On May 10, 2021, a Joint Status Report signed by Sarah R. Schalman-Bergen of Lichten & Liss-Riordan, PC, for the plaintiffs, and Elizabeth S. Muyskens of Stoll Keenon Ogden, PLLC, for the defendants, was submitted to the *Branson* court, identifying areas of agreement and disagreement with respect to notice protocol. Notice of Filing Joint Report Identifying Areas of Agreement and Disagreement, *Branson v. Alliance Coal, LLC, et al.*, No. 4:19-CV-155-JHM (W.D. Ky., May 10, 2021), ECF No. 172. In that Joint Status Report, the parties identified disagreement on the following methods of distributing notice and consent: the usage of email and text messaging, physical posting of notice and the usage of electronic signatures for collecting consent forms. *See id.* The *Branson* court expeditiously entered an order resolving these disputes on May 18, 2021. *Branson v.*

*Alliance Coal, LLC, et al.*, No. 4:19-CV-155-JHM, 2021 WL 1996392 (W.D. Ky. May 18, 2021).

Then, two months later, this Court entered a Memorandum Opinion and Order conditionally certifying the FLSA collective in this action. (Doc. # 89). The Court also cited *Branson* in that Order, referring to it as a "lawsuit against Alliance Coal . . . involving different mine locations based on similar allegations and supporting declarations." (*Id.* at 5). The Court also directed the parties to "meet and confer as to the content and form" of notice and consent forms and protocol in the action. (*Id.* at 12). The "meet and confer" process used by this Court is employed as a method of judicial economy – especially with respect to a non-dispositive, procedural aspect of an action, such as distribution of notice protocol. In short, the Court's hope is that the parties can work out the smaller issues themselves, without requiring the Court to expend resources to resolve those issues.

But unfortunately, the parties here were unable to work out their issues, and on August 12, 2021, they each submitted Status Reports identifying areas of disagreement with respect to notice and consent protocol. (Docs. # 96 and 97). Notably, these reports were signed by the same attorneys as the joint report in *Branson*—Elizabeth S. Muyskens for Defendants, and Sarah R. Schalman-Bergen for Plaintiffs—and they identified some of the exact same issues as they raised in *Branson*: the usage of text messages, the usage of electronic signatures, and the physical posting of notice.

Additionally, Plaintiffs requested "two modifications" from the *Branson* protocol, and noted that they were "agreeable to utilizing the same notice protocol and procedure that was authorized" in *Branson*. (Doc. # 97 at 4). Albeit in footnote form, Defendants also mentioned that the *Branson* protocol may bear on this Court's decision, noting that

6

with respect to electronic signatures, they had acquired new information that was "not known to Defense counsel and was not before the Court" in *Branson*. (Doc. # 96 at 7, n.3). Thus, it is surprising to the Court, that after Defendants noted in their Status Report that they had become aware of facts necessitating a break from the *Branson* protocol (*id.*), that the same Defendants would later claim "manifest injustice" after the Court evaluated those facts which Defendants themselves raised. (Doc. # 102-1 at 4).

Furthermore, to the extent that Defendants assert the Court's deference to *Branson*'s "essentially identical" notice and consent resolution as "incorrect" and necessitating "manifest injustice," the Court notes that in supervising the notice and consent process, it has "broad discretion." *Hoffmann-La Roche*, 493 U.S. at 171. That discretion extends to reasoning, which includes "the legitimate goal[s] of avoiding a multiplicity of duplicative suits and . . . expedit[ing] disposition of the action." *Id.* at 172. Here, seeing a restatement of the same arguments made by the same two attorneys in a concurrent action "against Alliance Coal . . . involving different mine locations based on similar allegations and supporting declarations," (Doc. # 89 at 5), the Court exercised its discretion and relied on that concurrent action where applicable, in the interest of expediting disposition of this action.

To be clear, however, the Court's Notice Order does not bear on decisions to be made later in this case, and as Defendants have opined, there are several decisions to be made. Nor does the Court expect its Notice Order to bear on decisions made by other courts. More specifically, Defendants are concerned that the Court's "implicit assumptions about similarly situated plaintiffs and joint employer status are, respectfully, incorrect, premature, and prejudicial." (Doc. # 102-1 at 6). But as previously stated,

7

"implicit assumptions" do not create "manifest injustice," and the Court broadly cautions both parties from attempting to read "implicit assumptions" from this Court's writing.

The Court's reference to the "same named Defendant" refers merely to the fact that in each concurrent action, Alliance Coal, LLC, is the defendant named in the case caption, being listed first on the Complaint. *See supra* note 1. Defendants asserts that this verbiage "suggests Alliance Coal, LLC is 'the' employer *across all pending actions*[.]" (Doc. # 102-1 at 6) (emphasis in original). However, the Court did not refer to Alliance Coal as "the employer" at any point in the Notice Order, and an attempt to craft a legal argument on such a reference, premised only on a quote of the singular article "the" appears to be disingenuous. (*See* Docs. # 102-1 at 6 and 105 at 5). Additionally, at Footnote 1 of page 2, the only usage of the word "employer" in the Notice Order, the Court recognizes that the parties have disputed the "listed employer's name" in the notice form language. (Doc. # 98 at 2). In short, Defendants are correct in that "[t]here has been no finding about joint employer status" in this case, and the Court's Notice Order certainly does not purport to make one.

Lastly, Defendants have requested reconsideration of the Court's ruling on the usage of DocuSign to the extent that the ruling was reached "solely as a result of its findings about *Branson*[.]" (Doc. # 102-1 at 6). The Court assumes that Defendants take issue with the Notice Order's finding that Defendants' arguments against DocuSign were invalid because "the process ha[d] been used successfully in a substantially identical action" without any of the issues arising about which Defendants were apparently very concerned. (Doc. # 98 at 8). To be clear, the Court's finding was not based "solely" on a deference to the *Branson* court. In the Notice Order, the Court stated clearly that

8

Defendants' concerns about identity verification and multiplicity of submissions were invalid not because of *Branson*, but because of the same <u>reasons</u> noted in *Branson*. (*Id.*). Furthermore, the Court's examination of the *Branson* record yielded a finding of no objections by Defendants on the very grounds by which they later have attempted to cry foul before this Court. The Court's usage of *Branson* in this specific manner was not of blind deference, but of an earnest inquiry into the legal arguments before this Court, because after all, as Defendants themselves stated in their status report, the issues they raised here were not known to them in *Branson* and were not before the *Branson* court. (Doc. # 96 at 7, n.3). For these reasons, the Court declines to re-open the arguments on DocuSign, which were exhaustively reasoned and explained in the Notice Order.

In close, and in short, the Court sees no "manifest injustice . . . apparent to the point of being indisputable." *Shirlington*, 78 Fed. Cl. at 31. The Court's usage of a sister court's order in a similar action during a non-dispositive stage of litigation, and at a stage during which the Court has "broad discretion" to supervise and act, *Hoffmann-La Roche*, 493 U.S. at 171, does not create "manifest injustice." To the extent that either party would suggest in the future that such a usage would have precedential effects on this action or on any other action, such a suggestion wlould not only be disingenuous, but also entirely futile. For these reasons and for all other reasons stated herein, the Court thus **denies** Defendants' Motion for Reconsideration.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)  Defendants' Motion for Reconsideration (Doc. # 102) is **DENIED;** and

(2) The parties are **ORDERED** to file a **Joint Status Report** no later than **twenty (20) days** from the date of entry of this Order providing the Court with an update on the notice and consent process, including whether extensions of deadlines are necessary in light of the Court's adjudication of this Motion.

This 12th day of November, 2021.

Signed By:
*David L. Bunning*
United States District Judge