UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:20-CV-00041-DLB-EBA

FREDDIE BREWER,
*on Behalf of Himself and*
*All Others Similarly Situated*,                                                    PLAINTIFF,

V.                                    **MEMORANDUM OPINION & ORDER**

ALLIANCE COAL, LLC, *et al.*,                                                    DEFENDANTS.

*** *** *** ***

This matter is before the Court on (1) Defendant Excel Mining, LLC's ("Excel") Motion

to Compel, [R. 147]; and (2) Plaintiff Freddie Brewer's Motion to Compel, [R. 148]. Both motions

are fully briefed, with each motion's respective responses and replies filed in the record. [R. 149,

150, 155, & 156]. The motions are now ripe for review.

## I. FACTUAL & PROCEDURAL BACKGROUND

This case was brought by Plaintiff Freddie Brewer as a collective action pursuant to the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and a class action under the Kentucky

Wages and Hours Act ("KWHA"), against Defendants Alliance Coal, LLC ("Alliance Coal"),

Alliance Resource Operating Parties, L.P. ("AROP"), Alliance Resource Partners, L.P. ("ARLP"),

Alliance Resource Management GP, LLC ("ARM"), Excel Mining, LLC ("Excel"), and MC

Mining, LLC ("MC Mining"), alleging that while employed as a coal miner for the Defendants at

the Excel Mine and the MC Mining Complex located in Pike County, Kentucky, Defendants

engaged in various wage/hour and overtime violations. [R. 1]. Specifically, Brewer alleges that

Defendants (1) required Brewer and similarly situated employees to arrive at work prior to their

scheduled shifts but did not pay employees for off-the-clock work including "donning" their uniforms and protective equipment; (2) failed to pay Brewer and similarly-situated employees for time spent working after the end of their shifts including time spent "doffing" their protective equipment; and (3) failed to include bonus compensation in Brewer's and similarly-situated employees' overtime pay calculations.  [R. 1 at ¶¶ 4–6, 29].

After filing the Complaint, Brewer submitted several consent documents from such employees and former employees who wished to opt-in to the action as "Opt-In Plaintiffs."  [R. 1-2, R. 5-1, 5-2, 10-1, 10-2, 11-1, 11-2, 12-1, 19-1, 20-1].  On July 20, 2021, the presiding District Judge granted Brewer's Motion for Conditional Certification, following the two-step approach defined in *Comer v. Wal-Mart Stores, Inc.*, 454 F3.d 544, 546 (6th Cir. 2006).  The Court found that Brewer "sufficiently demonstrated for purposes of conditional certification that the proposed class members [were] similarly situated by way of [Defendants'] common policies" regarding the requirement that miners "work prior to and after their scheduled shifts without pay" and their "fail[ure] to include bonuses in overtime pay calculations."  [R. 89 at pg. 5] (citing *Comer*, 454 F.3d at 547).  Accordingly, the Court defined the class as "[a]ll individuals who work or have worked as coal miners at the Excel Mine/MC Mining Complex between May 26, 2017 and the present."  [*Id.* at pg. 12].

Following conditional certification of the class, and the Court's approval of an opt-in consent form, [R. 98], Brewer filed additional consent forms into the record.  [R. 99-1, 104-1, 106-1, 107-1, 112-1, 113-1, 117-1, 119-1]; *cf.* [R. 145] (withdrawing Notice of Consent for Opt-In Plaintiff, [R. 10-2]).  As it stands, the class consists of 31 individuals.[1]

---

[1] This count includes Chris Stotridge, who filed his consent form nearly a month after the 60-day opt-in deadline. [R. 119].  Defendants' motion includes Stotridge in their count, but "expressly reserves the right to seek the exclusion of Stotridge as an opt-in plaintiff in this case."  [R. 147 at pg. 4 n.4].

In the course of discovery, the parties articulated several disagreements regarding the scope of discovery to which each party is entitled. In an effort to resolve their dispute, the parties requested a telephonic conference with the undersigned consistent with local practice and the Referral Order. [R. 54]. The Court held a telephonic conference, but the parties were at an impasse regarding the scope and breadth of discovery as it related to depositions, interrogatories, and requests for production from Opt-In Plaintiffs and six individual Defendants. [R. 46]. During the conference, the parties requested that they be permitted to simultaneously file motions to compel briefing the issues. The Court allowed the parties to file their motions, and also set aside the discovery deadline pending resolution of the motions. [*Id.*].

## II. LEGAL STANDARD

"[T]he scope of discovery is within the sound discretion of the trial court[.]" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (first alteration in original) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally, Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevant evidence in this context is that which "'has any tendency to make a fact more or less probable than it would be without the evidence,' if 'the fact is of consequence in determining the action.'" *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 485 (M.D. Tenn. 2018) (quoting Fed. R. Evid. 401).

Rule 26 permits the court to limit discovery if it determines that: (1) the additional "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or" (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues

at stake in the action, and the importance of the discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

The party moving to compel discovery bears the initial burden of proving the relevance of the information sought. See *Gruenbaum v. Werner Enters.*, Inc., 270 F.R.D. 298, 302 (S.D. Ohio 2010); see also Fed. R. Civ. P. 26(b)(1), Advisory Committee's Note to 2015 Amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").  A motion to compel discovery may be filed in a number of circumstances, including when "a party fails to answer an interrogatory submitted under Rule 33[,]" or "produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)—(iv).  "The court will only grant [a motion to compel], however, if the movant actually has a right to the discovery requested." *Grae*, 326 F.R.D. at 485.

## III. DEFENDANT EXCEL'S MOTION TO COMPEL [R. 147]

Defendant Excel's motion concerns a "common topic of dispute in FLSA actions: the appropriate scope of discovery regarding named plaintiffs and opt-in class members." *Martinez v. First Class Interiors of Naples*, LLC, No. 3:18-cv-00583, 2020 U.S. Dist. LEXIS 223020, at *8 (M.D. Tenn. Nov. 30, 2020).  In essence, Excel seeks to compel individualized discovery from all 31 Opt-In Plaintiffs and individuals who have submitted, or will submit, declarations in support of class certification ("Declarants").  The individualized discovery includes obtaining depositions from all Opt-In Plaintiffs and Declarants; and compelling responses to interrogatories and requests for production of documents, without objections, from all Opt-In Plaintiffs.[2]  For clarity, the Court

---

[2] Brewer filed six Affidavit Declarations in support of his Motion for Conditional Certification from the following individuals: Freddie Brewer, [R. 46-3]; Gary Adams, [R. 46-4]; Richard Osborne, [R. 46-5]; Shane Yates, [R. 46-6]; Cody Coleman, [R. 46-7]; Dwight Scott McBride, [R. 46-8], and Richard Osborne, [R. 46-6].  Presently, Adams, Yates, and Coleman are also Opt-In Plaintiffs.  Osborne withdrew his consent as an Opt-In Plaintiff, [R. 145], but remains a Declarant.  Based on Excel's motion, [R. 147], it appears that Yates, and McBride have been deposed.

shall enumerate the requested relief as follows:

(1) Authorize the parties to depose all individuals who submit affidavits or declarations on Brewer's behalf ("Declarants"), with depositions not to exceed three (3) hours each and an option to attend remotely;

(2) Authorize individualized discovery from all Opt-In Plaintiffs, including:
  (a) Deposing the remaining 29 Opt-In Plaintiffs, with depositions not to exceed three (3) hours; and
  (b) compelling production of 15 interrogatories[3] and 9 requests for production of documents served upon all 31 Opt-In Plaintiffs on January 4, 2022 with no objections;

[R. 147].

The Court shall assess the merits of each discovery request in turn below.

**A. Excel's Right to Depose Declarants**

As to Excel's first request to depose Declarants, including but not limited to Gary Adams and Richard Osborne, Excel argues that it is entitled to the depositions for a number of reasons. First, Excel relies on the principle that "[i]t is axiomatic that an individual who inserts himself . . . in a case by way of affidavit or declaration can reasonably expect to be subject to discovery . . . regarding the statements set forth in his . . . affidavit or declaration, whether by deposition or other means." [R. 147 at pg. 10] (citing *Prime Gas, Inc. v. City of Sacramento*, 184 Cal. App. 4th 697, 710 (Cal. App. 2010)). Second, Excel states that it has the "unequivocal right to cross-examine" Adams and Osborne because the Court relied upon their declaration when granting Brewer's Motion for Conditional Certification. [*Id.*].

_____

[R. 147 at pg. 10 n.12]. Thus, to the extent that Excel seeks depositions from Opt-In Plaintiffs, Excel seeks at most 29 additional depositions (including Adams). [*Id.*]. As for Declarants, Defendant has already deposed McBride and noticed Osborne's deposition to occur on March 11, 2022. [*Id.* at pg. 9 n.11]. Although Defendant's motion directs the Court to examine whether it is entitled to depose Opt-In Plaintiff Gary Adams or Declarant Richard Osborne, the motion also seeks to leave the door open to depose "any other individual who submits affidavits/declarations in this case on Plaintiff's behalf." [*Id.* at pg. 10].

[3] In its briefing, Excel states that it is willing to ask the Court to compel production of 15 of the original 18 interrogatories served upon Opt-In Plaintiffs. [R. 147 at pg. 6 n.8] ("Specifically, undersigned counsel stated Excel Mining's willingness to withdraw Interrogatory Nos. 11, 12, and 18 with respect to each opt-in plaintiff.").

It does not appear that Brewer opposes Excel taking the two remaining depositions.[4]  In the email correspondence provided by the parties, Brewer appears to only object to the individualized discovery as to the Opt-In Plaintiffs, making no comment regarding the depositions of Declarants who are not Opt-In Plaintiffs.  *See* [R. 147-4 at pg. 1–2].  From the briefing of the motion, the Court perceives that Excel's concern is that—whatever total number of depositions the Court permits relative to its motion—the depositions of the Declarants should not be counted toward that number.  [R. 147 at pg. 11 n.13].  Excel opines that, if the Declarant depositions counted toward the total number of depositions allowed by Excel in this action, Brewer would "litter the record with junk declarations" and thus limit the amount of depositions it could take as to the Opt-In Plaintiffs.  [*Id.*].

In this action's sister case in the Western District of Kentucky, which considered similar facts and legal argumentation in the context of a motion to compel, the court allowed Defendants to conduct individualized discovery of "all opt-in plaintiffs who submit affidavits or declarations in this case," including written discovery *and* depositions.  *Branson v. All. Coal, LLC*, No. 4:19-CV-00155-JHM-HBB, 2022 U.S. Dist. LEXIS 123731, at *17 (W.D. Ky. July 13, 2022).  Moreover, the court determined that the "affiants/declarants are deemed independent from the number of opt-in plaintiffs who shall [be] randomly selected to be subject to written discovery and/or depositions[.]" *Id.* at 17–18.

Given Brewer's lack of apparent objection to deposing Declarants, or to Excel's proposed framework to exclude them from the total count of allowed depositions, the Court shall follow the precedent set by the *Branson* court and permit Defendant to depose all Declarants, and shall deem

_____

[4] Excel's motion appears to indicate that the depositions of each Declarant, previously noticed for dates in March, were not conducted after the Court set aside the discovery deadline.  [R. 147 at pg. 9 n.11].  The record does not indicate that Brewer is opposed to Excel taking the depositions of Adams or Osborne.

those depositions excluded from the total number allowed by the Court, as discussed below. Moreover, the Court shall impose the limitations offered by Excel: depositions of the Declarants shall not exceed (3) hours and deponents shall have the option to attend by remote means.

**B. Excel's Right to Obtain Individualized Discovery from Opt-In Plaintiffs**

The next request in Excel's motion is for the Court to authorize the propounding of individualized discovery upon all Opt-In Plaintiffs.  [R. 147 at pg. 11].  First, Excel seeks to depose all 31 Opt-In Plaintiffs, or conduct 29 additional depositions in light of the fact that two Opt-In Plaintiffs have already been deposed.  [*Id.*].  Second, Excel seeks to compel responses to interrogatories and requests for production of documents directed at all 31 Opt-In Plaintiffs.  [*Id.*].

As the District Judge has conditionally certified a collective class in this matter, Excel's discovery request directly implicates public policy concerns as to the FLSA.  The overarching purpose of the FLSA is "to address 'unfair method[s] of competition in commerce' that cause 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'"  *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396 (6th Cir. 2017) (quoting *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015); 29 U.S.C. § 202(a)).  Part and parcel to effectuating the statute, which is "remedial and humanitarian in purpose," *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002), was Congress' authorization of collective actions "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).

In the Sixth Circuit, the class certification process takes place in two stages.  *See Comer*, 454 F.3d at 546.  At the first stage, following individuals "opting into" a lawsuit, a plaintiff must make a modest showing that the individuals who have opted-in are "similarly situated," so as to conditionally certify the class.  *Id.*  Following discovery, the court may "examine more closely the question of whether particular members of the class are, in fact, similarly situated."  *Id.* at 547.

At issue here is the permissible scope of discovery between the two stages of certification articulated by *Comer*. As the parties' briefing and cited authorities highlight, there is no clear answer regarding whether discovery should be limited to a representative group of plaintiffs, or discovery should be individualized and directed toward all Opt-In Plaintiffs. While the Sixth Circuit has recognized that "representative testimony from a subset of plaintiffs [can] be used to facilitate the presentation of proof of FLSA violations, when such proof would normally be individualized[,]" courts within and outside this Circuit have developed two lines of cases addressing the tension between the efficacy of representative discovery and the need for individualized discovery in FLSA actions. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 407 (6th Cir. 2017).

The first category of cases, and the approach advocated by Excel, treats opt-in plaintiffs like plaintiffs in an ordinary civil action and allows individualized discovery from all class members. *See, e.g.*, *Coldiron v. Pizza Hut, Inc.*, No. CV03-05865, 2004 U.S. Dist. LEXIS 23610, at *2 (C.D. Cal. Oct. 25, 2004) (allowing discovery from entire class of 306 opt-in plaintiffs); *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 446, 449–52 (S.D.N.Y. 1995) (allowing discovery from entire class of 152 opt-in plaintiffs); *Rosen v. Reckitt & Colman, Inc.*, No. 91 CIV. 1675, 1994 U.S. Dist. LEXIS 16511, at *4 (S.D.N.Y. 1994) (allowing depositions to be taken of all 49 opt-in plaintiffs); *Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1188 (E.D. Va. 1991) (allowing depositions to be taken of all 127 opt-in plaintiffs), *vacated on other grounds Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir. 1992); *Kaas v. Pratt & Whitney*, No. 89-8343-CIV, 1991 U.S. Dist. LEXIS 11177, at *5 (S.D. Fla. 1991) (allowing discovery to be taken from all 100 opt-in plaintiffs); *Mejia v. Bimbo Bakeries United States*, No. CV-16-00654-TUC-JAS, 2018 U.S. Dist. LEXIS 244459 (D. Ariz. May 4, 2018) (ordering all 45 opt-in plaintiffs to respond to seven categories of requests for production of documents).

Cases in the second category, and the approach Brewer desires, argues that FLSA collective actions should be limited only to class-wide and class-based discovery as is conducted in Rule 23 class actions. *See e.g.*, *Branson v. All. Coal, LLC*, No. 4:19-CV-00155-JHM-HBB, 2022 U.S. Dist. LEXIS 123731 (W.D. Ky. July 13, 2022) (allowing representative discovery of 526 opt-in plaintiffs); *Ross v. Jack Rabbit Servs.*, LLC, Civil Action No. 3:14-cv-00044-DJH, 2015 U.S. Dist. LEXIS 45603 (W.D. Ky. Apr. 7, 2015) (allowing representative discovery of 236 opt-in plaintiffs across 29 states); *Gentrup v. Renovo Servs.*, LLC, No. 1:07-cv-430, 2010 U.S. Dist. LEXIS 143203, at *7 (S.D. Ohio Aug. 17, 2010) (allowing discovery from representative sample of 106-member opt-in class); *Cranney v. Carriage Servs.*, Inc., No. 2:07-cv-01587, 2008 U.S. Dist. LEXIS 113606, at *3 (D. Nev. June 16, 2008) (limiting discovery to ten percent of 300-member class); *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006) (limiting discovery of 1500-member class to statistically relevant sampling); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002) (describing prior order allowing pre-decertification discovery from 25 opt-in plaintiffs in more-than-300-member class); *Lloyd v. J.P. Morgan Chase & Co.*, 2015 U.S. Dist. LEXIS 35161 (S.D.N.Y. Mar. 20, 2015) (ordering depositions of 20 opt-in plaintiffs of a 100-member class).

"It is in this Court's discretion to determine what line of cases is most applicable to the specific facts of the instant case[.]" *Gentrup*, 2010 U.S. Dist. LEXIS 143203, at *4. Choosing which approach to employ is a fact-intensive analysis which, in addition to considering Federal Rule 26, examines the following factors: the (1) size and composition of the class; (2) costs and burdens associated with discovery; and (3) type of discovery sought. *See Ross*, 2015 U.S. Dist. LEXIS 45603, at *6–9.

Here, the collective class consists of 31 individuals. Discussing the size and geographic diversity of the class in an FLSA action with 236 opt-in plaintiffs across 29 states,

Judge David Hale in the Western District of Kentucky noted the following:

> As class size increases, courts are generally less likely to require all plaintiffs to respond to discovery. . . . This makes practical sense as the logistics and efforts to arrange for plaintiffs to respond to discovery requests increase considerably as class size swells. While exceptions can be found at both ends of the spectrum, courts are especially likely to limit discovery where the costs and burdens are significant. In this case, the 236 opt-in plaintiffs represent a moderately sized class . . . and the geographic diversity of its members would significantly add to both the burden and cost of responding to individual discovery requests.

*Id.* at *6–7. Based on the record, the collective solely consists of "individuals who work or have worked as coal miners at the Excel Mine/MC Mining Complex between May 26, 2017 and the present," indicating that the class is not geographically diverse. [R. 89 at pg. 5]. In his briefing, Brewer dud not brief the Court on how to factor in the size and geographic diversity of the instant class, as he seemingly only takes issue with the composition of the class relative to the discovery sought by Excel. Thus, solely examining the size of the class and its composition, the Court finds that the factor weighs in favor of allowing individualized discovery.

The Court has also considered the type of discovery sought by the Defendant and the accompanying costs and burdens associated with such discovery requests. While Excel seeks significantly less discovery per-plaintiff than would be permitted under the Federal Rules in a non-FLSA action, the Opt-In Plaintiffs are, nonetheless, a collective class under the FLSA. Thus, the Court remains mindful of the policy behind such collective actions: to "promot[e] . . . judicial economy[,]" "lower[] individual costs [for the] vindicat[ion] of rights by the pooling of resources," and "resolv[e] in a single action common issues arising from the same alleged illegal activity." *Canaday v. Anthem Cos.*, 9 F.4th 392, 415 (6th Cir. 2021) (quoting *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020); *Halle v. W. Allegheny Health Sys. Inc.*, 842 F.3d 215, 223 (3d Cir. 2016)). When weighing the burdens and costs, particularly in the context of a small opt-in class, courts engage in a "case-specific analysis of the evidence and . . . weigh[] . . . the opposing interests and burdens of the

parties." *Johnson v. Int'l Steel & Counterweights LLC*, No. 4:20-cv-2584, 2021 U.S. Dist. LEXIS 221274, at *7 (N.D. Ohio Nov. 17, 2021).

Excel makes its position clear: individualized discovery is critical to "resolve factual disputes" and "closely scrutinize whether the opt-in plaintiffs are similarly situated within the meaning of the FLSA." [*Id.*]. In other words, absent individualized discovery, Excel claims it will not be able to adequately argue a future motion for decertification. Excel relies upon this Court's Order conditionally certifying the opt-in class: "Even this Court stated that [Excel's] off-set meal break defenses and willfulness defenses '**require individualized proof**.'" [*Id.* at pg. 12] (emphasis in original) (citing [R. 89 at pg. 10]). It is important to note that the District Judge, when conditionally certifying the class, did not envision the scope for Excel obtaining the individualized proof needed to prove its off-set meal break and willfulness defenses. In fact, when considering Excel's arguments against conditional certification, the District Judge noted several times that the arguments go toward the merits of Brewer's claims, and not necessarily whether the class is similarly situated. *See* [R. 89 at pg. 6–8]. Independent of its reliance upon this Court's previous Order, Excel is adamant that individualized discovery is necessary to "weigh competing evidence, to resolve factual disputes, and to closely scrutinize whether the opt-in plaintiffs are similarly situated within the meaning of the FLSA." [R. 147 at pg. 11].

Brewer, on the other hand, opposes any individualized discovery, arguing that deposing and subjecting full sets of discovery requests upon all 31 Opt-In Plaintiffs would run counter to the very purposes of the FLSA collective action mechanism. [R. 150 at pg. 11]. Moreover, Brewer maintains that individualized discovery would be overly broad and unduly burdensome, and thus violative of Federal Rule 26. [*Id.* at pg. 13]. As to written discovery, Brewer avers that Defendant's requested discovery is "a lengthy barrage of questions and document requests" aiming to "intimidat[e] the opt-ins" and "creat[e] unnecessary work for their counsel." [*Id.* at pg. 14]. For

instance, Brewer argues that Defendant's interrogatories are improper "because they seek from the opt-ins information that is readily available from [Excel's] own records (Interrogatory Nos. 1–3, 5, 13 and RPD Nos. 1–3 and 6–9) or because they seek sweepingly broad information which has little to no bearing on Brewer's and opt-ins' claims in this case (Interrogatory Nos. 4, 8–10)." [*Id.* at 14]. Brewer also asserts that the written discovery requests "would involve intensive searches of the opt-ins' phones and laptops spanning several years, and would necessitate extensive assistance from their counsel in sorting through the information and documents and formulating objections and responses." [*Id.*]. As to the depositions sought by Excel, Brewer opposes taking depositions of all Opt-In Plaintiffs for similar reasons, citing that the proposed individualized discovery would require nearly 100 hours of depositions, not including the time it would take to prepare and schedule the depositions, thus imposing an incredible burden on Brewer's counsel [*Id.* at pg. 16].

Considering the policy rationales for FLSA actions, and examining the interrogatories and requests for production served upon the Opt-In Plaintiffs, [R. 147-2 & 147-3], the Court determines that the written discovery sought is generally not overly burdensome or improperly cumulative. Overall, the language of each request is relatively plain and devoid of legal jargon. The interrogatories and requests for production are tailored to seek relevant and discoverable information, and appear to seek evidence that has a "' . . . tendency to make a fact more or less probable than it would be without the evidence,'" *Grae*, 326 F.R.D. at 485 (quoting Fed. R. Evid. 401).

However, some of the discovery requests are violative of Rule 26 and frustrate the purposes of the FLSA, so the Court shall curb Excel's requests by not requiring Opt-In Plaintiffs to respond to Requests for Production Nos. 2 & 3:

**REQUEST FOR PRODUCTION NO. 2:** All documents that relate to or reflect

the hours you worked during your employment with Defendant, including by way of example, but not limited to, any planners, notes, journals, calendar entries, receipts, work schedules, paystubs, e-mails, timesheets, and text messages.

**REQUEST FOR PRODUCTION NO. 3:**  All documents that describe, reference, reflect, or relate to any policies or practices of Defendant, whether formal or informal, concerning work schedules, hours worked, timekeeping, compensation, or overtime applicable to you during the Relevant Time Period.

[R. 147-3 at pg. 2–3].  Brewer's objections to these written discovery request are well-taken, as the scope of discovery under Rule 26 is directly limited by "the parties' relative access to relevant information."  Fed. R. Civ. P. 26(b)(1).  Request for Production No. 2, for instance, seeks documents reflecting hours worked during each Opt-In Plaintiff's employment with Excel.  Excel, by its own account, has timekeeping data maintained in its Oracle system.  Likewise, as to Request for Production No. 3, Excel—as the employer—likely has ready access to its own policies and practices.  Accordingly, the Court does not see a compelling reason to ask opt-ins to cull through years of electronic records to produce policies that would be created or at least maintained by Excel.  Based upon representations made by Excel in the record, the information sought by these requests would seem to be readily available to, and likely more easily accessed by, Excel.[5]

The remaining discovery requests are not rife with legal jargon, nor are they particularly difficult to understand.  Brewer argues that answering the requests will require "extensive assistance" from counsel.  [R. 150 at pg. 10].  For instance, Brewer takes issue with the requests that would require Opt-In Plaintiffs to go through their phone and computer records spanning years.  [*Id.* at pg. 15].  While some requests for production may require sorting through years of electronic communications,  Requests for Production Nos. 1 & 4–9, are tailored to seek discoverable information under Rule 26 while limiting the amount of work required of both the Opt-In Plaintiffs and their counsel.  Brewer has not advised the Court of any particular reason why

---

[5] Excel demonstrates that it would have access to such documents in its Response to Brewer's Motion to Compel.  *See* [R. 149 at pg. 8].

the Opt-Ins would not be able to understand the requests for information and documents, such as a language barrier. *See cf. Toliver v. JBS Plainwell, Inc.*, No. 1:11-cv-302, 2014 U.S. Dist. LEXIS 89765 (W.D. Mich. July 2, 2014) (ordering 60 opt-in plaintiffs to respond to requests for admissions and interrogatories and noting a "language barrier, . . . might be an impediment in some cases" but not where at least one plaintiffs' attorney was fluent in Spanish). Thus, all 31 Opt-In Plaintiffs shall be required to respond to Defendant's 15 Interrogatories and 7 Requests for Production.[6]

The Court shall also permit Defendant to depose ten (10) Opt-In Plaintiffs, roughly one-third of the entire class and a quantity suggested by Brewer. *See* [R. 150 at pg. 17]. Deposing this sample size will permit the Defendant to test responses to written discovery and obtain additional testimony so that it may be adequately prepared to move for decertification without overly burdening Brewer's counsel or the Opt-In Plaintiffs. As proposed by Excel, with no particularized objection from Brewer, each deposition shall be limited to three (3) hours and Opt-In Plaintiffs shall have the option to attend their depositions remotely. As stated above, the 10 depositions permitted are exclusive of the depositions of the Declarants.

### IV. BREWER'S MOTION TO COMPEL [R. 148]

Next, Brewer asks the Court to compel a considerable amount of discovery from Defendants Alliance Coal, ARLP, AROP, ARM, Excel, and MC Mining. [R. 148-1 at pg. 1]. By Brewer's own categorization, he asks the Court to compel discovery that fall into the following three categories:

(1) "[E]lectronic payroll and timekeeping records (together "Payroll/Timekeeping Records");
(2) "Matrix Minor and Equipment Tracking System records ("Matrix Records") for *all* Opt-In Plaintiffs";

---

[6] The Court declines to order Opt-In Plaintiffs to respond "without objection," as requested by Defendant. The Opt-In Plaintiffs shall have a full opportunity to respond and/or object to all written discovery.

(3) "[A] 10% random sample of [Matrix Records] of non-Opt-In miners at each mine"; and

(4) "disciplinary records relating to attendance and/or tardiness, documents reflecting complaints about work hours, documents reflecting any agreement or contract between an Opt-In Plaintiff and a Defendant, and sheets that record "early-in/early out" entries, to the extent they exist for all Opt-In Plaintiffs during the time period March 21, 2015 to the present ('Related Records')."

[R. 148-1 at pg. 6] (emphasis in original). Later in his motion, Brewer offers a laundry list of interrogatories and requests for production to which Defendants provided deficient responses. The Court is not in the position to speculate how Brewer seeks to organize the individual discovery requests with respect to the categories above. Thus, the Court shall instead assess the discoverability of the broader categories enumerated by Brewer. *See e.g.*, *Bunch v. Gen. Motors Corp.*, 9 F.R.D. 682, 684 (E.D. Tenn. 1950) ("Motions which call for 'categories' as distinguished from a designation of each specific document are sufficient" under Federal Rule of Civil Procedure 34).

**A. Payroll/Timekeeping Records**

Brewer moves to compel from all six Defendants Payroll/Timekeeping records for all Opt-In Plaintiffs and a 10 % sample from individuals in the class who have not opted-in to the action. From Brewer's motion, the Court can glean that this request includes electronic payroll and timekeeping records. [R. 148-1 at pg. 6]. Brewer asserts these records "are critical to Plaintiff's ability to demonstrate via concrete evidence that Brewer and the other mine workers in the putative Collective and Class were subject to the same unpaid off-the-clock pre-and post-shift work and other unlawful compensation policies." [*Id.* at pg. 11]. For instance, Brewer alleges that Defendants Excel and MC Mining, at the behest of the Parent Defendants (Alliance Coal, AROP, ARLP, and ARM), maintained cameras on the work premises, installed tracking devices in miners' helmets, and tracked the location of miners to calculate off-the-clock and pre-shift work prior to their entering the mines. [*Id.* at pg. 15–16].

"The movant of a motion to compel discovery bears the burden of demonstrating relevance." *Albritton v. CVS Caremark Corp.*, No. 5:13-CV-00218-GNS-LLK, 2016 U.S. Dist. LEXIS 83606, at *8 (W.D. Ky. June 28, 2016) (citing *United States ex rel. Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)).   To the extent that Brewer argues that Payroll/Timekeeping Records are relevant in general, he has met his burden.   However, Defendants' Response raises several concerns regarding the scope of such requests.   Defendants claim that Brewer has misdirected his requests for timekeeping records from the Parent Defendants, because only Excel is the custodian of those records.   [R. 149 at pg. 8].   The other five Defendants cannot disclose information, or produce documents, of which they have no knowledge or are not the custodian.   Accordingly, only Excel will be required to produce specific timekeeping and payroll records as to each Opt-In Plaintiff and 10% of Excel employees in the class that have not opted into this action.   However, *all* Defendants shall be required to respond to those interrogatories and requests for production which inquire about timekeeping or payroll policies or practices—including guidance given from the Parent Defendants to Excel or MC Mining.

Defendants also argue that, if Brewer seeks electronic timekeeping records *and* paper records, the Court should sustain its objections regarding such requests being burdensome and duplicative.   [R. 149 at pg. 10].   It is not clear from Brewer's interrogatories or requests for production, nor his motion, whether he seeks paper timesheet records in addition to electronic records.   Brewer's Reply, however, seems to indicate that he is seeking timekeeping records in any form.   *See* [R. 156 at pg. 16].   In any event, Defendant argues that any paper timesheet records are completed by the mine foremen, submitted to Excel's payroll department, and uploaded into Excel's Oracle software program.   [R. 149 at pg. 10.].   Thus, producing paper timesheets would

be duplicative of the electronic records that Defendants have agreed to produce.[7]  Moreover, based upon Defendants' representations, producing the paper versions of the payroll records would be incredibly burdensome, as foremen complete at least 16 timesheets per day for each hourly miner. [*Id.*].  Defendant states that, "[t]o produce the paper timesheets as Plaintiff demands for the period 2015 to present would cover **literally tens of thousands of documents**[.]"  [*Id.* at pg. 11] (emphasis in original).   However, Defendants state that they are willing to provide paper timesheets "referencing all hourly underground miners in the conditionally certified collective" for the month of November in 2018, 2019, and 2020, so that Brewer may compare them to the electronic records.  Brewer opposes this compromise, instead arguing that a random sample for each year for each miner would be more appropriate to cross-check the accuracy of Oracle timekeeping data.  [R. 156 at pg. 16–17].

The practice of random sampling of certain discovery, when production of discovery in full would be unduly burdensome, is a common practice in FLSA actions.  *See Branson v. All. Coal, LLC*, No. 4:19-CV-00155-JHM-HBB, 2022 U.S. Dist. LEXIS 123731, at *22–23 (W.D. Ky. July 13, 2022) (ordering depositions of random sample of class members) (citing *Sutton v. Diversity at Work Grp. Inc.*, 2021 U.S. Dist. LEXIS 106904, at *4 (S.D. Ohio June 8, 2021) ("While random sampling is not a hard-and-fast rule in class-based discovery, courts have stood behind the proposition that a randomly selected sample helps reduce the likelihood of bias. On the other hand, '[h]and-picking is almost certain to introduce a substantial amount of selection bias into the sample'")).  Thus, Excel shall produce a sample of paper timesheets from ten (10) random Opt-In Plaintiffs from two random months from the Relevant Time Period (March 2015 to the present).   Such a sample should ameliorate Brewer's concerns regarding the accuracy or

---

[7] In Defendants' Response to Plaintiff's Motion to Compel, Excel represented that it is willing to produce "Oracle data" for 316 individuals.  [R. 149 at pg. 9–10].

consistency among paper and electronic timekeeping records without overly burdening the Defendant.

Defendants also argue that the request for electronic paystubs exceeds the scope of Rule 26, as they are generated from the information entered into Oracle, and are thus duplicative to the Oracle timekeeping data also requested by Brewer. [R. 149 at pg. 12]. Defendants also argue that such paystubs are accessible by the Opt-In Plaintiffs through an online payroll portal. [*Id.*]. Paystubs, in and of themselves, are clearly relevant to the claims alleged in Brewer's complaint. *See Ward v. Guidant Glob. Inc.*, No. 20-cv-10283, 2021 U.S. Dist. LEXIS 237319, at *14 (E.D. Mich. Dec. 10, 2021) (referencing prior order where court "found Plaintiff's pay stubs 'demonstrate Bartech's straight time for overtime pay practice'"). However, since these documents are maintained electronically, the burden of production of the allegedly duplicative paystubs is far less than described in the context of the paper timesheets. Thus, Excel shall be ordered to produce electronic paystubs for all Opt-In Plaintiffs, from March 2015 to the present, or when employment was terminated.[8]

## B. Matrix Records

Brewer also moves the Court to order Defendants to produce Matrix Records, which he describes as data from a tracking device that can "measure the elapsed time . . . relating to off-the-clock unpaid aboveground work done before and after the miners' shifts." [R. 148-1 at pg. 11]. The Complaint alleges that a subsidiary of Parent Defendants, Matrix Design Group, LLC, installed technology—a tracking device—in each miner's helmet capable of following and recording their exact location. [R. 1 at pg. 10]. In addition to recording the locational data, Brewer

---

[8] If Brewer can later demonstrate a need for the requested records for employees who have not opted-in, they may do so by subsequent motion. See *Smith*, 236 F.R.D. at 358 (". . . [I]f, after conducting the discovery of the representative sample, defendants can demonstrate to the Court that broader discovery is appropriate and necessary, the defendants can so move.").

alleges that the technology records and preserves "the exact time each miner moves to a new location." [*Id.* at pg. 11]. Thus, the device would record when the helmet moved, and it would register with different "receivers" located in the "bathhouse" area of each mining facility. [*Id.*]. Accordingly, Brewer alleges, Defendants knew exactly when the helmets began moving—and thus when they started work—but "did not utilize that time for the purpose of paying Brewer and Class Members." [*Id.*].

Defendants respond that Brewer has "gravely mischaracterize[d]" the data generated by its Matrix system, and that the data is not relevant. [R. 149 at pg. 14]. Defendants aver that Matrix Design Group, LLC developed a software used for post-accident communication and electronic tracking of miners: the "Miner Electronic Tracking System" (METS). [*Id.*]. In sum, the miners' hard hats contain tags that are detectable by antennas, such that their location can be approximated in the event of an accident. [*Id.*]. Defendants state, offering the declaration from Matrix Design Group, LLC's Director of Technology and Chief Architect Tracy Hayford, that the METS data is not used for timekeeping. [*Id.*]. Hayford's affidavit acknowledges that a "check-in/check-out" feature is utilized by other mining operations in Kentucky, but not by the Excel or MC Mining operations. [*Id.*]. In fact, in order to have a check-in/check-out system, a "specialized reader" would be required, which is "separate from the [tracking system] itself." [*Id.*]. Consequently, Defendants claim that the *only* timekeeping mechanism utilized at the Excel and MC Mining operations are paper timesheets completed by mine foremen, which are then entered into its timekeeping system, Oracle. [*Id.* at pg. 15]. Defendants are adamant that the METS data does not produce "clocking records" and, thus, no relevant timekeeping data can be derived from such data. [*Id.* at 16].

Defendants further argue that producing METS data as requested by Brewer would be grossly disproportionate to the needs of the case, stating that in a period of two weeks, METS

antennas at the Excel facility capture about 3.5 million data points. [*Id.* at pg. 17]. Thus, "[i]t is necessary to regularly purge METS data in order to allow, and avoid the overwhelming of, Excel's servers to record METS tracking data on a continuing basis for compliance with the MINER Act of 2006." [*Id.*]. Thus, Defendants contend, as there is no relationship between METS records and timekeeping at Excel, the burden of production far outweighs any need Brewer has for the data. To these objections, Brewer raises a concern that Defendants' biweekly purge of the METS data constitutes spoliation. [R. 156 at pg. 8]. Accordingly, Brewer seeks whatever Matrix data has not been destroyed, and further asks the Court to "issue additional relief as appropriate." [*Id.* at pg. 11].

Preliminarily, the Court will address the issue of spoliation that Brewer raises in his Reply. District courts have broad discretion when considering the spoliation of evidence, including making credibility determinations, findings of fact, and crafting appropriate sanctions if and when the court determines spoliation has occurred. *Adkins v. Wolever*, 692 F.3d 499, 503 (6th Cir. 2012) (citing *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009); *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553, 554 (6th Cir. 2010)). Spoliation requires a party to "destroy[] evidence in anticipation of litigation." *Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016). When spoliation occurs, sanctions are appropriate if the party seeking a sanction can establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Adkins*, 692 F.3d at 503–04.

Certainly, Defendants admit to purging its servers of METS data every two weeks; therefore, the data requested by Plaintiff has certainly been destroyed during this litigation. However, Defendants dispute the relevance of the data—relevance being an essential prong to the

Sixth Circuit's test for spoliation sanctions. In the context of spoliation, the "relevance" prong is satisfied when the party asserting spoliation "make[s] 'some showing indicating that the destroyed evidence would have been relevant to the contested issue.'" *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014) (quoting *Beaven*, 622 F.3d at 554). Evidence is "relevant" when it is "something more than sufficiently probative to satisfy [Fed. R. Evid.] 401" such that "a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been the nature alleged by the party affected by its destruction." *Automated Sols. Corp. v. Paragon Data Sys.*, 756 F.3d 504, 514 (6th Cir. 2014) (quoting *One Beacon Ins. Co. v. Broad. Dev. Group, Inc.*, 147 F. App'x 535, 541 (6th Cir. 2005)) (alteration in original). The moving party may rely on circumstantial evidence to make its showing of relevance. *Yoder & Frey Auctioneers, Inc.*, 774 F.3d at 1071 (citing *Beaven*, 622 F.3d at 555).

Based on Brewer's discussion of the Matrix Records in his Complaint and in the instant Motion to Compel, it appears that the timekeeping characteristic of tracking data allegedly produced by the Matrix technology is essential to the data's relevance. Thus, the data would be relevant if it would tend to prove that the tracking device recorded miners "clocking in" and "clocking out" by tracking their location, and that such data was not properly utilized to correctly pay Brewer and class members. Correspondingly, the data is irrelevant if it does not tend to prove the tracking data had a timekeeping function. Beyond his own assertions, Brewer's claims that Defendants collected, maintained, or used METS data for timekeeping purposes is unsupported by the record. On the other hand, Defendants have offered some support for its assertion that there is "no logical relationship" between METS tracking data and Defendants' "evaluating the actual time [miners] spent performing work before, during, or after an individual's shift." [R. 149 at pg. 16]. Defendants offer an affidavit from Tracy Hayford, which Brewer opines is self-serving. *See* [R. 156 at pg. 9]. Nevertheless, Hayford acknowledges that there is software that "pull[s] from the

METS system" that can be utilized at the "check-in/check-out stations" described by Brewer in its Complaint, and that such software and stations are used at other mines in Kentucky.  [R. 154-1 at pg. 2].  Hayford, however, is adamant that neither Excel nor MC Mining utilize the software or hardware that would enable the Defendants to use METS data for timekeeping purposes.  On the other hand, Brewer does not direct the Court to any other evidence—circumstantial or otherwise— to support its claims about how METS data created or used by the Defendants is used for timekeeping.  Upon independent examination of the record—including all affidavits filed by Brewer in this matter[9] and excerpts of deposition transcripts—there is little supporting evidence for Brewer's claims regarding the METS data being used for timekeeping.  Perhaps the strongest evidence in the record Brewer has for his claims is an affidavit from Opt-In Plaintiff Shane Yates, who stated the following in support of Brewer's Motion for Conditional Certification:

> To clock-in, I would lift and wave my hard hat up against a screen, which would register the tracking device inside the hard hat and recognize my biodata.  Aside from payroll, this innovative timekeeping system's tracking device also served as a safety and accountability measure once I was inside the mine because it had [the] ability to surveil my location.

[R. 46-6 at pg. 2].  However, the credibility of the affidavit has been called into question following Yates' deposition, where Yates' testimony indicates that either he does not remember signing the affidavit or he did not read it.  [R. 149-4 at pg. 9–10].  Setting aside the affidavit and its credibility, Yates stated the following during his deposition:

> Q:      Okay. Earlier you described paper time sheets as the way time was kept.  Is that correct that you used paper time sheets or was there a clock-in/clock-out system?
>
> **A:      We used paper time sheets.  The only way they could do the clock—I don't— it's not really a clock-in/clock-out.  I mean, most of the time most of the men didn't do it, was the tracker on your hat, and you would step in front of a tracking system and that was mostly just to check to see if your tracker on your hat was working.  It would—it would put a time down that you was there,**

---

[9] Of the affidavits filed by the Plaintiff throughout the duration of this action, Shane Yates and Dwight Scott McBride are the only Opt-In Plaintiffs who reference a tracking device in their helmets.  *See* [R. 46-6 at pg. 2 & 46-8 at pg. 3].

**but everything was paper.**

Q:      So whatever the time you claim came from the tracking system, it was not used for timekeeping; is that correct?

**A:      No, it wasn't used for timekeeping.**

Q:      Okay.  And you said most of the men didn't even do that tracking piece?

**A:      No, they didn't.**

[*Id.* at pg. 5].  Examining other deposition transcripts in the record, some of the Opt-In Plaintiffs discuss "scanning" their hard hats at the start of their workdays, but there is not consistent testimony regarding the frequency such scans were required, or Defendants' timekeeping practices in general.  *See e.g.*, [R. 149-5 at pg. 3] (deposition of Opt-In Plaintiff Cody Coleman) (stating "I just don't remember exactly how often I had to check my tracker on my hard hat"); [R. 150-1 at pg. 20] (deposition of Plaintiff Freddie Brewer) (describing walking into bathhouse and scanning tracking device); [R. 147-1 at pg. 4] (deposition of Dwight McBride) (answering in the negative when asked "Do you know how Excel kept track of hours worked by miners from March of 2015 to present?").

Based on the foregoing, there is no evidence—even circumstantial evidence—that would give credence to Brewer's claims that Defendants' METS data was used for anything beyond tracking miner location.  Assuming that METS data solely tracks miners' location, Plaintiff has not met the threshold burden of demonstrating that the data is relevant to its claims regarding Defendants' misuse of the data to incorrectly pay miners.  Thus, there has not been an adequate showing that the METS data from March 2015 to the present is relevant for spoliation purposes or under Rule 26.  For this reason, the Court declines to administer spoliation sanctions on Defendants and shall not compel Defendants to produce any METS data at this time.

**C. Related Records**

Finally, Brewer moves to compel a catch-all category it calls "Related Records" consisting

of "disciplinary records relating to attendance and/or tardiness, documents reflecting complaints about work hours, documents reflecting any agreement or contract between an Opt-In Plaintiff and a Defendant, and sheets that record 'early-in/early out' entries'" for all Opt-In Plaintiffs from March 2015 to the present. [R. 148-1 at pg. 6]. Brewer perfunctorily claims that such records are relevant, proportional to the needs of Brewer and the collective class for both its FLSA and KWHA claims. [*Id.*]. Brewer goes on to explain in some detail that the Related Records—along with the other requested discovery—"are all critical to Plaintiff's ability to demonstrate via concrete evidence" that Brewer and other members of the class were subject to the same alleged illegal employment practices, including "unpaid off-the-clock pre-and post-shift work[,]" "unlawful compensation policies," and the imposition of "non-discretionary bonuses" not included in miners' regular rate. [*Id.* at pg. 21].

Defendants' Response indicates that they only oppose fulfilling Brewer's request in its entirety, as they offer to supply Related Records as to those Opt-In Plaintiffs whom Defendants depose. [R. 149 at pg. 2]. However, Defendants have made no showing that supplying Brewer with the records as requested would run afoul of Rule 26. The personnel records requested by Brewer are highly probative of Brewer's claims of allegedly unlawful employment practices, especially as it pertains to whether employees were disciplined due to attendance or tardiness, whether employees complained to Defendants about their work hours, and documentation of employees clocking in or out early. To the extent that such records exist, or that each Defendant is the actual custodian of the records, all Defendants shall be compelled to produce the information and documents responsive to Brewer's written discovery requests for Related Records.

## V. CONCLUSION

Having fully considered the record and the parties' briefing, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that:

1. Defendant Excel's Motion to Compel is **GRANTED in part**, as follows:

   a. Excel is permitted to depose each individual who has submitted, or will submit, and affidavit or declaration in support of certification of the collective class ("Declarants").  Depositions of Declarants shall not exceed three (3) hours and deponents shall have the option to attend the deposition by remote means to be determined by parties' counsel.

   b. Each Opt-In Plaintiff shall respond to Excel's written discovery requests consistent with this Order, including Excel's Interrogatories Nos. 1–10 & 13–17; and Excel's Request for Production of Documents Nos. 1 & 4–9.

   c. Excel is permitted to depose **ten (10)** Opt-In Plaintiffs.  Depositions of the Declarants shall not count toward this total number.  Depositions of Opt-In Plaintiffs shall not exceed three (3) hours and deponents shall have the option to attend the deposition by remote means to be determined by parties' counsel.

2. Brewer's Motion to Compel is **GRANTED in part**, as follows:

   a. Excel shall respond to interrogatories and requests for production related to specific electronic timekeeping and payroll records, as to each Opt-In Plaintiff and 10 % of members of the class who have not opted into this action.

   b. All Defendants shall respond to interrogatories and requests for production which inquire about timekeeping or payroll **policies or practices**—including guidance given from the Parent Defendants to Excel or MC Mining.

   c. Excel shall produce a sample of paper timesheets from **ten (10)** Opt-In Plaintiffs from **two random months** each year during the Relevant Time Period (March 2015 to the present).

    d.  Excel shall produce electronic paystubs for all Opt-In Plaintiffs during the Relevant Time Period, from March 2015 until the present.

    e.  To the extent that such records exist, or that each individual Defendant is a custodian of such records, Defendants shall produce information and documents responsive to Brewer's request for "Related Records," including disciplinary records relating to attendance and/or tardiness, documents reflecting complaints about work hours, documents reflecting any agreement or contract between an Opt-In Plaintiff and a Defendant, and sheets that record 'early-in/early out' entries.

**IT IS FURTHER ORDERED** that discovery deadlines are **REINSTATED**. The Court's schedule as set forth in [R. 120] is **AMENDED** as follows:

1. In accordance with the Federal Rules of Civil Procedure, the parties shall conduct **fact discovery** on the issue of final collective certification. Such discovery, including compliance with the directives of this Order, shall be concluded **ninety (90) days following entry of this Order**; and

2. **Ninety (90) days following entry of this Order**, the parties shall file a **joint status report**, including the status of the case at the conclusion of fact discovery, the possibility of settlement, and if applicable, a proposed briefing schedule on the issue of final collective certification for the Court's adjudication.

Signed October 5, 2022.



Signed By:

*Edward B. Atkins*

**United States Magistrate Judge**